FILED
CLERK, U.S. DISTRICT COURT

JUL 29 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DALE E. BOEWE, | ) NO. ED CV 08-755-AG(E) |
| Plaintiff, | ) |
| v. | ) MEMORANDUM AND ORDER DISMISSING |
| DR. HILL, et al., | ) COMPLAINT WITH LEAVE TO AMEND |
| Defendants. | ) |

For the reasons discussed below, the Complaint is dismissed with leave to amend. See 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)(1).

**BACKGROUND**

Plaintiff, a state prisoner incarcerated at the California Institution for Men ("CIM"), brings this civil rights action pursuant to 42 U.S.C. section 1983 against prison officials at CIM and the California State Prison at Lancaster ("Lancaster") and a California deputy attorney general. The CIM Defendants are: (1) podiatrist Dr. Hill; (2) podiatrist Dr. Galhly; (3) the Chief Medical Officer;

(4) Sergeant Sharp, a receiving and release sergeant; (5) correctional counselor J. Y. Felix; (6) appeals coordinator B. Leymaster; (7) trust account officer C. Dale; and (8) correctional lieutenant Sams. The Lancaster Defendants are: (1) Dr. Alleyne; (2) the custodian of medical records; and (3) an unidentified receiving and release sergeant. Plaintiff also sues deputy attorney general Charles Antonen. Plaintiff sues all Defendants in their official and individual capacities.

The Complaint is somewhat disorganized. It does not always clearly allege what incident occurred at which prison or what each Defendant allegedly did or failed to do. The chronology of events is also difficult to follow. It appears that Plaintiff allegedly suffers from foot problems, including plantar fascitis, for which Plaintiff assertedly received medical treatment prior to his incarceration (Complaint, pp. 5-6). Plaintiff's outside doctor allegedly told Plaintiff that Plaintiff should not walk without orthotics and orthopedic shoes, and that doing so could cause Plaintiff to tear the tendons in his feet (Complaint, p. 5).

Plaintiff was housed at Lancaster from approximately March 2007 through May 2007 (Complaint, p. 7). When Plaintiff first arrived at Lancaster, Plaintiff allegedly had orthotics previously prescribed by an outside doctor, for which Plaintiff assertedly had paid $450 (Complaint, p. 9). The Lancaster receiving and release sergeant allegedly took Plaintiff's orthotics and threw them in the trash in front of Plaintiff (Complaint, p. 9). Plaintiff allegedly began requesting orthotics and orthopedic shoes on or about March 7, 2007

(Complaint, p. 5). Plaintiff allegedly told "medical staff" that Plaintiff was in extreme pain and needed orthotics and orthopedic shoes (Complaint, p. 7). An unidentified doctor and unidentified medical staff allegedly told Plaintiff that they had no resources and that Plaintiff would have to wait until he was transferred out of Lancaster to receive the medical assistance Plaintiff assertedly needed (Complaint, p. 7). Plaintiff allegedly had no crutches or cane while at Lancaster, assertedly causing Plaintiff to fall and suffer serious injuries (Complaint, p. 7). The doctor and medical staff allegedly told Plaintiff that Plaintiff would have to wait until he transferred to receive medical assistance (Complaint, p. 7). A Lancaster doctor allegedly denied Plaintiff x-rays, but ordered crutches for Plaintiff which Plaintiff assertedly never received (Complaint, p. 7). After approximately three months without crutches, the doctor assertedly told Plaintiff to turn in the crutches, and Plaintiff, allegedly still in excruciating pain, assertedly responded that he had never received the crutches (Complaint, p. 7). That day, a nurse allegedly told Plaintiff that there were no medical supplies at Lancaster and that the custodian of records had given instructions to "toss out a lot of papers from the medical files" (Complaint, pp. 7-8).[1]

While at CIM, Plaintiff allegedly obtained orthotics at his own expense (Complaint, p. 10). Although Plaintiff allegedly had a doctor's order for the orthotics, Defendant Sergeant Sharp assertedly

---

[1]   It is unclear whether Plaintiff alleges that his files were among those "tossed," and who Plaintiff contends "tossed" the files.

sent the orthotics back to the sender twice (Complaint, p. 10). The third time Plaintiff allegedly received an empty envelope which reportedly had contained orthotics when sent (Complaint, pp. 10-11).

On October 14, 2007, Plaintiff allegedly saw Dr. Galhly, who assertedly told Plaintiff that there was no money or facility for therapy, and said he could do nothing for Plaintiff (Complaint, p. 11). Plaintiff later allegedly observed other inmates receiving physical therapy (Complaint, p. 11). Dr. Galhly allegedly denied Plaintiff's request for a wheelchair, saying that inmates with no legs were waiting for wheelchairs (Complaint, p. 11). Dr. Galhly allegedly refused to look at Plaintiff's medical records, refused to order x-rays, denied Plaintiff's request for MRIs, and falsely stated that the California Department of Corrections and Rehabilitation did not provide orthotics (Complaint, p. 12). Dr. Galhly allegedly intentionally disregarded Plaintiff's complaints of pain (Complaint, p. 23).

Plaintiff alleges that, on November 27, 2007, a CIM nurse told Plaintiff that there was no podiatrist at CIM any longer (Complaint, p. 8). Plaintiff alleges that the Chief Medical Officer delayed hiring a podiatrist, and hires staff who will not spend prison money for treatment of prisoners (Complaint, p. 8). The absence of a podiatrist allegedly delayed Plaintiff's treatment, which assertedly caused injuries to Plaintiff's feet and caused Plaintiff to become so depressed, panicky and suicidal that Plaintiff reportedly was compelled to see a psychiatrist (Complaint, p. 8).

///

4

On one occasion, apparently at CIM, Plaintiff was scheduled to see the doctor on duty, although no doctor was on duty that day (Complaint, p. 9). The Chief Medical Officer allegedly did nothing to correct this asserted "illegality" (Complaint, p. 9).

On or about February 8, 2008, Plaintiff allegedly saw Dr. Hill (Complaint, p. 4). Plaintiff allegedly tried to explain that Plaintiff had gone through a year of intense outside therapy for his feet, that Plaintiff needed orthotics and orthopedic shoes, and that Plaintiff was in extreme pain (Complaint, pp. 4-5). Dr. Hill allegedly did nothing other than to tell the nurses how drunk he (Dr. Hill) had been (Complaint, p. 4). Dr. Hill allegedly refused to look at Plaintiff's prior medical records, assertedly falsely stating it was against policy to do so (Complaint, p. 5). Dr. Hill allegedly falsely told Plaintiff that it was impossible to get orthotics at CIM or within the California prison system (Complaint, p. 5).

On April 2, 2008, Plaintiff allegedly appeared at a classification committee hearing at which Plaintiff assertedly said he was in poor health and extreme pain due to his foot condition (Complaint, p. 12). Plaintiff alleges that in the initial committee report Defendant Felix recorded falsely that Plaintiff told the committee Plaintiff's health was good, assertedly in violation of state regulations (Complaint, pp. 12-13). The committee allegedly assigned Plaintiff to the kitchen, although the committee assertedly knew about Plaintiff's condition, his involvement in the Americans with Disabilities Act program and his use of crutches (Complaint, p. 13). The committee allegedly disregarded a medical "chrono" which

assertedly restricted Plaintiff to a "sitting type of job" (Complaint, p, 14). Although the classification committee report allegedly was corrected subsequently to show that Plaintiff told the Committee his health was poor, Defendant Felix allegedly retained Plaintiff on full duty in the kitchen, where Plaintiff assertedly was required to stand for hours, reportedly causing permanent injury to Plaintiff's feet (Complaint, pp. 13-14).

The CIM appeals coordinator allegedly rejected seven appeals Plaintiff filed or tried to file, thereby assertedly violating Plaintiff's First Amendment right to redress of grievances (Complaint, pp. 14-18, 20).[2] Defendant Sams allegedly intentionally disregarded Plaintiff's appeal requesting the orthotics sent to Plaintiff (Complaint, pp. 18-19).

Defendant trust account officer allegedly took money out of Plaintiff's trust account for restitution, although Plaintiff already had completed his restitution payments (Complaint, p. 19). The appeals coordinator allegedly rejected Plaintiff's appeal concerning this issue on the ground that Plaintiff made inappropriate comments on the appeal (Complaint, p. 19).

Plaintiff generally contends Defendants violated Plaintiff's rights to medical care, his right to property, his right of access to the courts, his right to redress of grievances, his right to due

---

[2] However, the Complaint lists and attaches copies of more than seven appeals which Plaintiff allegedly filed or attempted to file (Complaint, pp. 14-18).

process, his Eighth Amendment right to be free from cruel and unusual punishment, and his right to freedom of speech (Complaint, p. 4). These claims, however, are not contained in separately pleaded claims for relief. Plaintiff seeks compensatory damages in the sum of $21,000 and punitive damages in the sum of $63,300 (Complaint, p. 23). Plaintiff also seeks an injunction preventing Defendants "from denying medical care," "from throwing away property," "from taking funds illegally," and "from throwing away criminal records."

## DISCUSSION

### I. Plaintiff May Not Sue State Officials for Damages in Their Official Capacities.

Plaintiff may not sue Defendant state officials for damages in their official capacities. The Eleventh Amendment bars suits for damages against state officials in their official capacities. See Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989); Romano v. Bible, 169 F.3d 1182, 1185 (9th Cir. 1999), cert. denied, 528 U.S. 816 (1999).

### II. Allegations of Random and Unauthorized Property Deprivations Do Not State a Constitutional Claim for Relief.

To the extent Plaintiff alleges a Defendant or Defendants took or threw away Plaintiff's property or took money from Plaintiff's trust account without authorization, the Complaint alleges no cognizable constitutional claim for relief. A random and unauthorized property

7

deprivation does not constitute a denial of due process if state law provides an adequate post-deprivation remedy. Hudson v. Palmer, 468 U.S. 517, 533 (1984). California law provides an adequate post-deprivation remedy for random and unauthorized property deprivations. See Barnett v. Centoni, 31 F.3d 813, 817 (9th Cir. 1994).

### III. The Complaint Fails to Identify Clearly the Claims Against Each Defendant.

Under Rule 8(a) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain" statement of the claim for relief. "Each averment of a pleading shall be simple, concise, and direct." Fed. R. Civ. P. 8(e).

The Complaint consists of a lengthy narrative, and does not set forth separately each of Plaintiff's claims or clearly identify which Defendant is sued on which claim. Plaintiff mentions unnamed doctors, "medical staff" and committee members without identifying many of those persons or indicating whether those persons are Defendants. A complaint is subject to dismissal if one cannot determine from the complaint who is being sued, and for what relief. McHenry v. Renne, 84 F.3d 1172, 1178 (9th Cir. 1996).

Moreover, an individual defendant is not liable on a civil rights claim unless the facts establish the defendant's personal involvement in the constitutional deprivation or a causal connection between the defendant's wrongful conduct and the alleged constitutional

deprivation. See Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978). To state a claim against any individual defendant, a plaintiff must allege facts showing that the individual defendant participated in or directed the alleged violation, or knew of the violation and failed to act to prevent it. See Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998), cert. denied, 525 U.S. 1154 (1999) ("A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights."); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Plaintiff's vague allegations that unidentified doctors, "medical staff" members, committee members or other unidentified prison officials generally violated Plaintiff's rights do not suffice under these standards. See Barren v. Harrington, 152 F.3d at 1194.[3]

### IV. The Complaint Fails to Allege an Unconstitutional Denial of Access to the Courts.

A prisoner claiming a violation of his right of access to the courts must demonstrate that he has standing to bring the claim by showing the defendant's actions caused the prisoner to suffer "actual

---

[3] Plaintiff has failed to identify certain Defendants by name. A plaintiff may sue a fictitious defendant if the plaintiff does not know the true identity of the defendant prior to the filing of the complaint. Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999). However, before the Court can order service of process by the United States Marshal upon any fictitious Defendant, Plaintiff must provide identifying information sufficient to permit the United States Marshal to effect service of process upon the Defendant, such as the Defendant's full name, rank (if any) and address.

injury" in pursuit of either a direct or collateral attack upon a conviction or sentence or a challenge to the conditions of confinement. <u>Lewis v. Casey</u>, 518 U.S. 343, 349 (1996). Under <u>Lewis v. Casey</u>, a prisoner must show that an action was "lost or rejected," or that presentation of a non-frivolous claim was or is being prevented, as a result of the alleged denial of access. <u>Id.</u> at 356. Actual injury is not demonstrated by the simple fact that a prisoner is "subject to a governmental institution that was not organized or managed properly." <u>Id.</u> at 350. Plaintiff does not plead he suffered any "actual injury" within the meaning of <u>Lewis v. Casey</u>.

## V.   **Prison Officials' Failure to Respond to Grievances Does Not Violate the Constitution.**

To the extent that Plaintiff alleges prison officials refused to respond to grievances, the Complaint is insufficient. While prisoners may enjoy a First Amendment right to file jail grievances, <u>see</u> <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567 (9th Cir. 2005), prisoners have no "separate constitutional entitlement to a specific prison grievance procedure." <u>See</u> <u>Ramirez v. Galaza</u>, 334 F.3d 850, 860 (9th Cir. 2003), <u>cert. denied</u>, 541 U.S. 1063 (2004) (citation omitted). The failure of prison officials to respond to or process a particular grievance does not violate the Constitution. <u>See</u> <u>Flick v. Alba</u>, 932 F.2d 728, 729 (8th Cir. 1991); <u>Teahan v. Wilhelm</u>, 481 F. Supp. 2d 1115, 1120-21 (S.D. Cal. 2007) (rejecting claim that failure to use certain procedures in processing grievance violated First Amendment, citing, <u>inter alia</u>, <u>Ramirez v. Galaza</u>, <u>supra</u>); <u>Morris v. Newland</u>, 2007 WL 707525, at *7 (E.D. Cal. March 6, 2007), <u>adopted</u>, 2007 WL 987846 (E.D.

1  Cal. March 30, 2007) ("a failure to process a grievance does not state
2  a constitutional violation") (citation omitted); <u>Alonzo v. Squyres</u>,
3  2002 WL 1880736 (N.D. Cal. Aug. 9, 2002) ("Although there certainly is
4  a right to petition the government for redress of grievances (a First
5  Amendment right), there is no right to a response or any particular
6  action.") (citations omitted); <u>see also</u> <u>Baltoski v. Pretorius</u>, 291 F.
7  Supp. 2d 807, 811 (N.D. Ind. 2003) ("[t]he right to petition the
8  government for redress of grievances, however, does not guarantee a
9  favorable response, or indeed any response, from state officials").

**VI. Plaintiff's Claims that Prison Officials Violated State Law or State Prison Regulations Do Not State a Cognizable Claim for Relief Under 42 U.S.C. Section 1983.**

It is axiomatic that, to state a claim under 42 U.S.C. section 1983, the plaintiff must allege a violation of a right secured by the constitution or federal law. <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1982), <u>overruled on other grounds</u>, <u>Daniels v. Williams</u>, 474 U.S. 327 (1986); <u>Haygood v. Younger</u>, 769 F.2d 1350, 1353 (9th Cir. 1985), <u>cert. denied</u>, 478 U.S. 1020 (1986). Mere allegations of state law violations do not suffice to plead a section 1983 claim. <u>See</u> <u>Galen v. County of Los Angeles</u>, 477 F.3d 652 (9th Cir. 2007) ("Section 1983 requires Galen to demonstrate a violation of federal law, not state law. [citation]."); <u>Lowell v. Poway Unif. Sch. Dist.</u>, 90 F.3d 367, 370-71 (9th Cir. 1996) ("To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress"; citation omitted). Plaintiff's allegations

that Defendants violated state law and prison regulations fail to state a claim for relief pursuant to 42 U.S.C. section 1983.

VII. **Plaintiff May Not Seek Injunctive Relief Against Lancaster Prison Officials.**

Because Plaintiff evidently no longer is incarcerated at Lancaster, Plaintiff's claims for injunctive relief against Lancaster prison officials are moot. See Dilley v. Gunn, 64 F.3d 1365, 1368-1369 (9th Cir. 1995).

## CONCLUSION

For all of the foregoing reasons, the Complaint is dismissed with leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc); 28 U.S.C. § 1915(e)(2)(B), § 1915A(b). If Plaintiff still wishes to pursue this action, he is granted thirty (30) days from the date of this Memorandum and Order within which to file a First Amended Complaint. The First Amended Complaint shall be complete in itself. It shall not refer in any manner to any prior complaint. See Fed. R. Civ. P. 21. Plaintiff shall set forth his claims for relief separately and shall identify each Defendant sued on each claim for relief. See Fed. R. Civ. P. 10(a), (b). Failure to
///
///
///
///
///

file timely a First Amended Complaint may result in the dismissal of this action.

DATED: JULY 26, 2008.

ANDREW J. GUILFORD
UNITED STATES DISTRICT JUDGE

Presented this 20th day of June, 2008 by:

CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE